246          KENTUCKY REPORTS.          [Vol. 113

Economy Building & Loan Assn., &c. v. Paris Ice Manufacturing Co.

CASE 35—ACTION BY PARIS ICE MANUFACTURING CO. AGAINST ECON-
OMY BUILDING & LOAN ASSOCIATION, &C. TO RECOVER USURY PAID
—MAY 2.

# Economy Building & Loan Association, &c. v. Paris Ice Manufacturing Co.

## APPEAL FROM BOURBON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT AND JOHN T. HINTON AP-
PEALS. AFFIRMED.

CORPORATIONS—RIGHT OF PRESIDENT TO PLEAD DISSOLUTION—METHOD
OF DISSOLUTION—DISSOLUTION NOT COMPLETE UNTIL DEBTS PAID.

Held: 1. One upon whom process against a corporation has been serv-
ed as its president may show that the corporation has been dis-
solved, so as to absolve it from suit.

2. Under Kentucky Statutes, section 561, providing that any corpora-
tion organized under the present law "may, by the consent in
writing of the owners of the majority of its shares of stock,
unless otherwise provided in the articles of incorporation or
amendments thereto, close its business and wind up its affairs,"
an affidavit stating that a majority of the stockholders of such
a corporation, in a meeting held for that purpose, voted in fa-
vor of closing up its affairs, and that the directors, pursuant
thereto, did wind up its affairs, does not show a compliance with
the provisions necessary to effectuate a dissolution.

3. As the statute provides that the corporation may, after dissolu-
tion, "continue to act for the purpose of closing up its business,"
and that "all debts and demands against the corporation shall
be paid in full before the officers receive anything," a corpo-
ration organized under the present law continues, until its debts
are paid, to exist for the purpose of being sued.

4. As Gen. St. c. 56, section 8, provided that the dissolution of a
corporation organized under that chapter should not take place
prior to the time fixed in the articles of incorporation, "un-
less preceded by the newspaper publication required at its or-
ganization," the required newspaper publication of four weeks
is a condition precedent to the voluntary dissolution of a cor-
poration organized under that chapter.

5. A corporation created by special act of the Legislature prior to
the present Constitution, as to which no method of dissolution

Economy Building & Loan Assn., &c. v. Paris Ice Manufacturing Co.

is expressly provided, can not be dissolved by the act of its stockholders, so as to exempt it from suit for existing liabilities; and it is doubtful whether, in the absence of statutory authority permitting it; the resolution of a mere majority in interest of stockholders may terminate its existence for any purpose before the date fixed by its charter.

6: The mere fact that plaintiff participated in the meeting at which the resolution to wind up the affairs of the corporation was passed does not operate to discharge defendant from liability to him, there being in fact no dissolution; and, even if plaintiff's act operated as an estoppel, it could be pleaded only by the corporation.

McMILLAN & TALBOTT, FOR APPELLANT.

It seems clear to us that if an alleged corporation is sued and there is no such corporation in existence, that the person who is served with process as an agent of the alleged corporation, has a right to appear in court and show that there is no such corporation.

The only question to be decided by this court on this appeal is, whether or not the former president of the Economy Building & Loan Association had the right to show the non-existence of this corporation either by affidavit filed and motion to quash the summons and return, or by filing his petition and alleging the non-existence of the corporation. His petition, though rejected, was made a part of the record for the purposes of this appeal.

In this case both methods were resorted to and the court refused to consider his application and refused to allow his petition to be filed.

We insist that his petition should have been allowed to be filed and the preliminary question of the existence of the corporation adjudicated, and for this error this appeal is filed and a reversal asked. Morawetz on Corporations, sec. 773; Kelley v. Miss. Central Railroad, 2 Flipp, 581.

E. M. DICKSON & JOHN S. SMITH, FOR APPELLEE.

(No brief for appellee.)

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Appellee was a borrower from appellant association. In June, 1900, they settled the loan by appellee's paying $2,010.87. Within one year thereafter appellee brought this suit against appellant to recover $422.90 alleged to have

248        KENTUCKY REPORTS.        [Vol. 113

Economy Building & Loan Assn., &c. v. Paris Ice Manufacturing Co.

been collected as usurious interest on the loan. Summons on the petition was served on J. T. Hinton, as president of appellant association. He filed his affidavit and a motion to quash the service upon him. It is stated in the affidavit that before the filing of the petition in this case "a majority of the stockholders of the Economy Building & Loan Association, in a meeting held for that purpose, voted in favor of closing up its business and winding up its affairs; that the plaintiff participated in the said proceedings to ascertain the will of the stockholders as to closing up the affairs of said corporation, and voted its forty shares in favor of closing up the business of said corporation; that pursuant to the will of the majority of the stockholders, including plaintiff, thus ascertained, the directors of said company prior [evidently intended to say "subsequent"] to said date proceeded to wind up the affairs of said corporation; that during the summer of 1900 the assets of said company were collected and reduced to money, with full knowledge and consent of plaintiff, and pursuant to the authority given by plaintiff; that during the summer of 1900, pursuant to authority so given, and with full knowledge and consent of the plaintiff, the assets of said corporation were completely distributed among its shareholders, including plaintiff; that said corporation then, with full knowledge and consent of plaintiff, completely closed up its business and wound up its affairs, and that its existence was thus by the voluntary act of its stockholders terminated in the summer of 1900, since which time it has had no existence, and no president or other officer; and that at the time of the service the affiant was not the president of the corporation, and the corporation was not in existence." Before the motion to quash the service of summons was acted on, J. T. Hinton tendered a petition

in the case, pleading substantially the same facts set forth in his affidavit. The court denied his motion to file his petition upon the ground that he was a stranger to the record and to the subject-matter of the litigation. It also overruled his motion to quash the service. No defense being made or tendered by the corporation, a judgment by default was entered against it for the sum prayed for in the petition. From that judgment this appeal is prosecuted.

From the statement filed upon the appeal, as required by section 739, Civ. Code Prac., we find that the appellants are "Economy Building & Loan Association of Paris, Ky., by John T. Hinton, and John T. Hinton." It may be accepted that appellee's relation to appellant association, taking the averments of the petition as true, is that of creditor to debtor. The questions then presented are: (1) If the appellant corporation had been in fact and in law dissolved, and no longer had a legal existence, how may such state of fact be shown in the record? (2) From the facts stated, had appellant corporation been so dissolved that it could not properly be sued as such, and therefore should the action have been abated?

. If it be assumed that the corporation had in fact been dissolved in such manner as authorized by law, so as to destroy its legal existence as a body corporate, including the capacity to sue or be sued, that fact was one pertinent to the maintenance of this suit. It was due the plaintiff, and especially to the court, that the folly of rendering a void judgment be averted. For if the corporation, sued as such, had no existence, it manifestly could neither make defense, nor employ counsel for that purpose; nor would a judgment rendered against it bind anybody or anything. If it be said that the corporation can not plead its own death or non-existence, on the one hand, and that a stranger to the record

250 KENTUCKY REPORTS. [Vol. 113

Economy Building & Loan Assn., &c. v. Paris Ice Manufacturing Co.

and to the subject-matter of litigation may not show cause against the plaintiff's suit, on the other, the court would be powerless to receive legal advisement of a fact essential to the exercise of its jurisdiction. The argument may be sufficiently met by the suggestion that the person served is not such a stranger to the record as to preclude his showing cause against plaintiff's recovery in such an instance. If the relief sought includes the doing of some act or performance of some alleged duty, the act could be done only by the officers of the corporation, likely including the respondent. His failure to comply with the judgment might be punishable as a contempt of the court. Furthermore, "the plaintiff having treated the persons served with process as representing the alleged corporation, he can not preclude them at least from denying that there is such a corporation." Mor. Priv. Corp., sec. 773; Kelley v. Railroad Co. (C. C.), 1 Fed., 564. We conclude that it was permissible for appellant Hinton, being the one served as president of the corporation, to show its non-existence if he could.

The next inquiry is, did the facts stated show that the corporation had been legally dissolved, so as to absolve it from prosecution by suit? The solution of this question involves the examination of the nature of this corporation, and of the law regulating its dissolution. It is not shown when or how appellant corporation was created,—whether it was under the present statute, enacted in 1893, or was under the general law in force previous thereto (being chapter 56 of the General Statutes), or by special act of the Legislature. The record does show that the contract out of which grew appellee's claim was first entered into on February 14, 1895. If we should assume, then, that the corporation was formed under the present law, we find that it has not followed the statutory requirements to effectuate its

dissolution.   On that subject, section 561, Kentucky Stat-
utes, provides:  "Any corporation organized under this
chapter may, by the consent in writing of the owners of the
majority of its shares of stock, unless otherwise provided
in the articles of incorporation or amendments thereto,
close its business and wind up its affairs; and when any cor-
poration expires by the terms of the articles of incorpora-
tion, or by the voluntary act of its stockholders, it may
thereafter continue to act for the purpose of closing up its
business, but for no other purpose; and it shall be the duty
of the officers to settle up its affairs and business as speed-
ily as possible; and they shall cause notice to be published,
for at least once a week for four consecutive weeks, in some
newspaper printed and published in the county, if any, of
the fact that it is closing up its business; and all debts and
demands against the corporation shall be paid in full be-
fore the officers receive anything."   "Where the statute pre-
scribes the steps to be taken by the members of a corpora-
tion for a surrender of its charter, those steps must, of
course, be followed, in order to terminate the existence of
the corporation."   5 Thomp. Corp., sec. 6688.   The facts
alleged by appellant Hinton do not bring the attempted dis-
solution within the terms prescribed in section 561, Ken-
tucky Statutes.   But even if it should be held otherwise,
we then conclude, from the text and intent of the statute,
that the preliminary steps of dissolution must all be de-
pendent upon the corporation's discharging its debts and
liabilities; that, till its debts are paid, it continues to be a
corporation, to the extent of allowing it to be sued, or to
take other steps toward discharging all its liabilities.

If it be assumed that appellant corporation was created
under the general provisions of chapter 56, General Stat-
utes Kentucky, we find that the facts stated in appellant

Hinton's affidavit do not show a sufficient compliance with the law then in effect governing the voluntary dissolution of corporations. Section 8, c. 56, General Statutes, was: "The corporation shall not be dissolved prior to the period fixed upon in the articles of incorporation, except by a majority of the stock of its members, unless a different rule is adopted in the articles; and no such premature dissolution shall take place unless preceded by the newspaper publication required at its organization." This publication was required to be for four weeks "in some newspaper as convenient as practicable to the principal place of business." It was held to be a condition precedent to the existence of the corporation (Heinig v. Manufacturing Co., 81 Ky., 301) 5 R., 281; and upon that precedent, as well as by the language of section 8, supra, it would likewise be a condition precedent to ts voluntary dissolution.

Or if it be assumed that appellant corporation was created by a special act of the Legislature, prior to the present Constitution of 1891, and that no method of dissolution was expressly provided, we find that the facts stated in appellant Hinton's affidavit fall as far short of satisfying the legal requirements allowing the dissolution of such corporations as they did of either of the other methods. It has frequently been laid down that private corporations may lose their legal existence in four ways: (1) By the act of the Legislature; (2) by the death of all the members; (3) by a forfeiture of their franchises; (4) by a surrender of their charters. 5 Thomp. Corp., sec. 6577, and authorities there cited. We are concerned here with the last-named method only. Almost every corporation may be said to bear certain obligations, whatever its privileges. If it be authorized to incur debts, their payment, or if payment is refused, their satisfaction by means of the law's process, is

first among its obligations with which the creating power of governments is concerned. Formerly it was held at the common law that, when a corporation was dissolved, it could not be sued for any purpose; that its lands reverted to the grantor or his heirs, and its chattels escheated to the crown; and that its dissolution in fact extinguished its debts. Bank v. Lockwood's Adm'r, 2 Har., 8; Fox v. Horah, 36 N. C., 358, 36 Am. Dec., 48. It is not surprising that a result so disastrous to the creditors of the corporation should not have been left dependent alone upon the act of the incorporators, or a majority of them. As said by Mr. Justice Morton in Manufactory v. Langdon, 24 Pick., 49, 35 Am. Dec., 292: "Charters are in many respects compacts between the government and the corporators. And as the former can not deprive the latter of their franchises in violation of the compact, so the latter can not put an end to the compact without the consent of the former. It is equally obligatory on both parties. The surrender of a charter can only be made by some formal, solemn act of the corporation, and will be of no avail until accepted by the government." The author, in 5 Thomp. Corp., sec. 6680, combats this idea of acceptance by the granting sovereign, as inapplicable to purely private corporations, which are under no obligation to render public service, although the learned commentator seems to have been unable to find judicial authority to support his argument. As early as 1851 this court had occasion to incidentally consider the principle discussed. In Portland Dry Dock & Ins. Co. v. Trustees of Portland, 12 B. Mon., 77, the facts were that the appellant insurance company was under obligation to pay to appellees $200 per year, in the nature of a tax. The appellees brought suit to recover that sum for one year's tax. The plea was that the appellant company had, prior

to the year for which the tax was assessed, dissolved by unanimous act of the corporators. Upon these pleadings the question was discussed whether a private corporation could, at its own mere will, dissolve itself by its own mere act. It was argued by the court that in England it seemed to be the established law that a corporation could not effectually dissolve itself by a surrender of its franchises unless the surrender be made to the king and accepted. "Upon analogous principles the surrender in this country should be made to and accepted by the Legislature, and it would doubtless be effectually evidenced by a repeal of the charter upon petition of the corporators. It is certainly desirable that there should be a legislative act prescribing a mode by which private corporations might be dissolved by the act of the corporators, so manifested as to be conclusive, at least against themselves." And while the court doubted, and was not prepared to say that a corporation purely private in its character and objects, and created for the sole benefit of the individual corporators, might not, by the act of the corporation and the corporators, be divested of its corporate privileges and existence, on the ground that the assent of the Legislature might in such a case be presumed from the nature and object of the charter itself, "but," the court said, "the act ought to be unequivocal and conclusive. And clearly the corporation could not by its own act, or that of the corporators, importing a dissolution, be so dissolved as to discharge it from any contract or liability existing against it." It might furthermore be doubted whether, in the absence of statutory authority permitting it, the resolution of a mere majority in interest of stockholders of a corporation might terminate its existence before the date fixed by its charter. The circuit court therefore properly found in this case, from the facts averred by the president

of appellant corporation, that it had not been legally dissolved; and as he had not denied that he was the president of the corporation, except for its supposed dissolution, the motion to quash the service of the summons was properly overruled. Nor could the mere fact that appellee participated in the meeting at which the resolution to wind up the affairs of the corporation was passed operate so as to discharge it from liability to him. In the first place, his participating in the attempted dissolution could not dissolve the corporation, unless the statutory method was pursued. The corporation not having dissolved, his action was therefore a nullity, as was that of the other corporators, in so far as it attempted that fact. Nor can it be said that his act operated as an estoppel in this case. It was not pleaded as such by the corporation, which alone was authorized to interpose such a defense. The circuit court therefore properly, in the absence of all defenses, entered a judgment *pro confesso*.

The judgment is affirmed, with damages.