## Griffith v. Daylight Saving B. & L. Assn.

*Harold D. Saylor*, for plaintiff.
*William S. Peace*, for defendant.

OLIVER, P. J., August 17, 1939.—This is a bill in equity, filed by a stockholder of a building and loan association which is in course of voluntary liquidation, to compel the association to offer to convey its real estate to its stockholders in exchange for their shares of its unencumbered stock. The association appears to be solvent but it holds a substantial quantity of real estate which is burdensome to carry and cannot be sold except at a sacrifice. The answer admits the allegations of the bill. The Department of Banking objects to the granting of the relief prayed for by plaintiff.

### Discussion

Defendant building and loan association is being informally liquidated. It appears to be solvent. As of November 30, 1938, it had assets of $382,424.84, and liabilities of $344,486.42, the difference being made up of reserves and earnings aggregating $37,938.42. The cash on hand amounted to $13,819.27. Included in the assets were encumbered real estate valued at $123,612.15, unencumbered real estate valued at $3,000, and real estate improvements valued at $14,384.31. Included in the liabilities were instalment stock, full-paid stock, matured

stock, and withdrawn shares, aggregating $342,840.51. It is agreed that all shareholders have an equal status, and that no shareholder has priority over any others.

To facilitate liquidation plaintiff, as the holder of shares of stock of defendant association with a value of approximately $2,326, by bill in equity asks that defendant be ordered to offer to all its shareholders to convey any of the association's real estate at its book value or its real or appraised value, whichever is greater, in exchange for unencumbered stock, whether it be full-paid, canceled, matured or withdrawn stock of such shareholders, at the value thereof stated on the books of the association. In event of more than one shareholder making a bid for any particular property, the proposal contemplates that the highest bid, provided it is not less than either the book or appraised value of such property, shall be accepted.

In support of his prayer plaintiff, among other contentions, argues that "It obviously is to the advantage of the association to divest itself of its real estate holdings. It is in informal liquidation by and with the consent of the directors and the Department of Banking. The present depressed condition of the real estate market makes it impossible to follow the normal procedure of selling association real estate. It is impossible in many 'cases to make a sale except at a great sacrifice. Unless the association is permitted to convey its real estate for shares of its stock and thus cancel its liabilities and realize the book value or better on its real estate assets it cannot liquidate. Moreover, the liability of the association as registered owner of the real estate remains and the association continues to be charged with the payment of taxes on all the real estate it owns. Added to this saving would also be reduction of expenses for repairs and maintenance of properties, including fire and liability insurance. Furthermore, the association is constantly subject to the burden of amortizing the principal of mortgages secured by its real estate. . . . Moreover, the more

quickly the association is able to dispose of its real estate holdings and thereby to cancel its liabilities to shareholders the more quickly will it be in a position to use its cash receipts to pay off those shareholders who do not choose to accept real estate. This means that the shareholder who takes real estate in satisfaction of his shareholdings and assumes a burden in so doing, helps his fellow shareholder who waits for payment in cash by accelerating the process of liquidation and thereby bringing to early consummation the final cash liquidation of the association."

The plan proposed has many practical advantages and it is quite possible that it would work to the advantage of every shareholder — those who might retain their shares as well as those who might submit bids for parcels of real estate. But however attractive such a proposal may appear as a means of facilitating final liquidation and dissolution of defendant association, this court, in the absence of the consent of all shareholders, cannot lend its support to a method of distribution which violates the fundamental rule that any distribution in liquidation, in the absence of an express agreement by all shareholders to the contrary, must be pro rata as to amount and equal in time.

While technically this association may be solvent, it is not certain that shareholders will ever receive the full value of their shares. Plaintiff, as the basis for his prayer, contends that the association cannot sell its real estate "except at a great sacrifice" and that the expenses of carrying the real estate are so heavy they are consuming and will probably continue to consume all available cash of the association. Therefore, if the association sells its real estate promptly, it is quite probable the sum realized will not be sufficient to pay every shareholder in full and, if the association waits for a doubtful better market for the type of real estate it holds, the carrying charges may offset, or more than offset, any hoped-for increase in prices. While an exchange of such real estate for shares

might facilitate distribution, it is probable that, in the end, the shareholders who do not wish to accept real estate, and those who find it impossible to obtain in exchange any desirable real estate because they hold only a few shares, or because of any other reason, will have to wait a long time to receive their distributive shares of the assets of the association and may then, because of poor prices and the burden of carrying charges, receive substantially less than the shareholders who might be both willing and able to accept at this time real estate for their shareholdings. This result is made even more probable by the reasonable assumption that shareholders exchanging their shares at this time for real estate, if such exchange were ordered, would naturally bid for the best parcels, leaving the least salable parcels in the hands of the association for slow, burdensome, and unprofitable liquidation.

The fact that the proposed plan might conceivably facilitate liquidation and work out advantageously to all shareholders does not justify a decree which would deprive nonassenting shareholders of their right to have distribution made on a pro rata basis to all shareholders at the same time and by the same method.

While the facts were somewhat different in the case of Craycraft, etc., v. National B. & L. Assn., 117 Ky. 229, 235, 77 S. W. 923, 925, we quote with approval the following language from the decision of the Court of Appeals in that case:

"The argument is made that, in the course of a voluntary liquidation, upon a statutory dissolution of a corporation, the will of the majority in interest as to the time and method of procedure, so long as it does not produce a substantial inequality in the result, must be allowed to control. The argument is utilitarian, and is opposed by the characterizing principles of the common law, which regard the rights of the individual in private property, in preference to the will or welfare of any greater contending number. The question of the rights of the stock-

holders as among themselves is one of implied contract. It is that, upon a dissolution of the joint enterprise for which they formed the corporation, its assets, after paying its indebtedness, will be distributed pro rata among the stockholders according to interest. It may be that, if these assets were of a quality capable of an exact partition in the proportion represented by each shareholder's interest, they might be distributed in specie. But that can rarely happen. The only dividend which can ordinarily receive the devisor [sic] of share interests is money. The basis or [sic] contribution, of reckoning liability, and of apportioning the final results is money. To liquidate, in law, is to make certain or exact, in units of money, and, in the sense which the word is used in winding up a corporation, to discharge, in lawful money, the liabilities so ascertained. Each stockholder is entitled, as a matter of right, and as an incident of his contract, to participate in the distribution on that basis. Although the majority in interest and numbers may conceive their interest to be, and although it may be a fact that their interest is, to hold the assets of the corporation for future enhancement of value or for other uses, the dissident members are not bound to yield their right to a legal liquidation to the welfare of the others. To make them do so would be compelling them, against their wills, to enter into a different contract from the one originally made. The doctrine being discussed is thus stated by Cook on Stock and Stockholders (1st Ed.), §636. 'When the regular business of the corporation has been brought to a close, the shareholders have a right to an immediate distribution of the corporate assets. They can not, therefore, be compelled to accept other property or rights in lieu of cash.' The authorities cited by the author support the text. Using the instant case as an illustration, it may be, and probably is, that among the nonconsenting or dissenting stockholders there are some who hold but a few shares—possibly some who hold only a single share—of stock. It is not likely that such of them would be able to find a piece of real

estate on the list of the same value as his share or shares. He may not be able or willing to invest money in addition in the real estate offered, and especially at the price offered. He would then be compelled to yield absolutely to other stockholders his claim as stockholder upon $140,-000 of real estate of the corporation, and to take the chances of realizing an equal proportion from the remaining assets of the company. It might be advisable for him to adopt that plan. But the question is, does the law compel him to relinquish a present valuable interest for a chance? It is not true, strictly, that every stockholder has an equal chance in the proposed plan, even if an even chance in anything except money would satisfy his right. For there are about $200,000 worth of shares, at book value, with only about $140,000 of real estate at book value. Some of these shares must necessarily fail to participate in this partition of the real estate, and therefore be compelled to take whatever chance there may be in realizing an equivalent sum, proportionately, from the other assets of the company. If they should fail, to that extent there would be an unequal distribution of the assets of the corporation among the shareholders of the same rank, if the scheme here involved should be adjudged by the court. Such a distribution would never be decreed or sanctioned by a court of chancery. Nor are we aware of either principle or precedent that would allow a minority stockholder to be bound against his will by a resolution of the majority that would or could produce such result."

The court therefore draws the following

### Conclusions of law

1. Shareholders of a liquidating building and loan association are entitled to have distribution made on a pro rata basis to all shareholders at the same time and by the same method.

2. In the absence of an express agreement by all shareholders assenting to such method of distribution, defend-

ant association is not obliged to offer to convey its real estate to its shareholders in exchange for its unencumbered stock.

3. Plaintiff's bill should be dismissed.

The court therefore enters the following

### Decree nisi

And now, to wit, August 17, 1939, this cause having come on to be heard on bill and answer, it is ordered, adjudged and decreed:

1. That plaintiff's bill be dismissed.

2. That plaintiff pay the cost of these proceedings.

NOTE.—The formal findings of fact accompanying the foregoing discussion have been omitted.